# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 09 2019, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Patrick B. McEuen
McEuen Law Office
Portage, Indiana

ATTORNEY FOR APPELLEE
PORTER COUNTY BOARD OF
ZONING APPEALS

Nathaniel C. Henson
Rhame Elwood & McClure
Portage, Indiana

ATTORNEY FOR APPELLEES
WILLIAM GREMP, TAMMIE
CHAMPIE, ROBERT SHUDICK,
SHARON SHUDICK, JERRY
UITERMARKT, KEITH ELLIS,
KRISTIN ELLIS, ED LAURIDSON,
MARCIA LAURIDSON, AND
NEAL MOLENGRAFT

Charles F.G. Parkinson
Harris Welsh & Lukmann
Chesterton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Virginia Novak,

*Appellant-Defendant,*

v.

Porter County Board of Zoning Appeals,

*Appellee-Plaintiff,*

and

William Gremp, Tammie Champie, Robert Shudick, Sharon Shudick, Jerry Uitermarkt, Keith Ellis, Kristin Ellis, Ed Lauridson, Marcia Lauridson, and Neal Molengraft,

*Appellees-Intervenors*

September 9, 2019

Court of Appeals Case No. 18A-MI-3134

Appeal from the Porter Superior Court

The Honorable Roger V. Bradford, Judge

Trial Court Cause No. 64D01-1710-MI-9592

**Vaidik, Chief Judge.**

# Case Summary

Virginia Novak owns a fifty-acre homestead in Valparaiso that includes a private road used by her neighbors to access their homes. In 2017, Novak began regrading and transporting fill onto part of her property, including along the private road. The Porter County Board of Zoning Appeals (BZA) filed a complaint for injunctive relief, alleging that Novak violated an ordinance that requires property owners to obtain a permit before engaging in land-disturbing activities affecting more than 10,000 square feet. The trial court granted the

injunction, enjoining Novak from transporting fill onto her property and ordering her to remove any fill that was placed along the private road. Novak now appeals, arguing that she is exempt from the ordinance's permit requirement. Because the trial court correctly found that the permit requirement applies to Novak, we affirm.

## Facts and Procedural History

[2] Novak owns fifty acres of land on West Joliet Road in Porter County, Indiana. She has lived there since 1968. Her property includes a sixteen-foot-wide access easement (the "private road") that runs north and south along her entire western property line. The private road is the only way that Novak's neighbors, who live north of her property, can access their homes. To the west of her property, there is a farm, which was maintained as pasture until about ten years ago. Novak's property is lower than the farm, and ground water has always flowed from the farm, across the private road, into Novak's backyard, where it then drains into a ditch. In 2009, the owner of the farm passed away, and his heirs began leasing the land to a farmer, who rotates between corn and soybeans.

[3] After the farm became active, Novak noticed that her backyard and low-lying areas in the northern part of her property began eroding. In June 2017, Novak decided to repair her property. She had fill dirt delivered and began regrading and filling the northern part of her property, including along the private road.

[4] On June 23, Michael Novotney, Porter County's engineer, investigated a complaint that Novak was engaged in land-disturbing activities on her property. Novotney visited Novak's property and saw that between 20,000-25,000 square feet of soil had been stockpiled. Novotney reported what he had seen to the director of Porter County's Department of Development and Storm Water Management, who decided to issue a stop-work order. On June 26, Novak received the stop-work order. On July 5, Novotney did a follow-up visit and spoke with Novak, explaining that a permit was required for land-disturbing activities. She responded that she "didn't intend to do any harm" and that she was "going to grade everything out and fill." Tr. p. 22. Novotney saw that since his first visit, additional material had been brought in and stockpiled on Novak's property, including "stone and some broken concrete." *Id.* at 23. Novotney also saw that there were stockpiles placed along the private road, creating a permanent berm, which was "acting like a dam and preventing water from moving along its natural drainage course." *Id.* at 24. As a result, there was "standing water on th[e] private road." *Id.*

[5] In October 2017, Novotney again visited Novak's property and observed that there was more material being brought on site, which again included soil "as well as rock and what appeared to be broken concrete." *Id.* at 26. Later that month, the BZA filed a complaint for injunctive relief, alleging that Novak was engaging in land-disturbing activities without a permit, in violation of the Porter County Unified Development Ordinance Section 7.15 (the "ordinance"). That section provides, in relevant part:

B. Applicability:

    1. *Land-disturbing Activity*: *Section EC: Erosion Control Standards* shall apply to all land-disturbing activities within the unincorporated area of Porter County, Indiana.

    2. Exceptions:

        a. Minor Projects: *Section EC: Erosion Control Standards* shall not apply to minor projects where land-disturbing activities involve less than 10,000 square feet . . . [;]

        b. *Section EC: Erosion Control Standards* shall not apply to existing nursery, mineral extraction, or agricultural operations conducted as a permitted primary or accessory use;

        c. Emergency Activity: *Section EC: Erosion Control Standards* shall not apply to any emergency activity that is immediately necessary for the protection of life, property or natural resources.

C. <u>Erosion Control Permit Required:</u> Before commencing any land-disturbing activity to which *§ EC: Erosion Control Standards* applies, the developer of the site shall be required to file an application and obtain an Erosion Control Permit[.]

The BZA also alleged that Novak's activities were having a significant negative impact on the storm-water management of the area and creating a nuisance. The BZA asked that the trial court enter a permanent injunction, enjoining Novak from further violations of the ordinance. *See* Appellant's App. Vol. II p.

16. In November, Novak filed a counterclaim against the BZA, alleging that (1) she engaged in land-disturbing activities to conduct existing agricultural operations, that is, housing and rearing horses and maintaining pasture land for her horses and (2) that she engaged in land-disturbing activities as an emergency activity to protect the lives of people and animals who were endangered by the loss of the private road, to stop her fencing from washing away, and to protect the pasture land used by her horses, and that therefore the ordinance does not apply. *See id.* at 37. In December, ten of Novak's northern neighbors filed a motion to intervene in the suit, alleging that Novak's land-disturbing activities interfered with their right to use the private road. The trial court allowed the neighbors to intervene.

[6] In January 2018, Novotney visited Novak's property and saw that additional grading had been done and that there was standing water on the private road, which in some places was ten inches deep. In June, Novotney visited Novak's property once again and saw evidence of additional grading activity, that grass was growing on the berm that Novak had created along the private road, and that "broken concrete, asphalt, [and] stone" was being used as fill. Tr. p. 31.

[7] Over the course of two days in October 2018, the parties presented evidence for and against an injunction. Novotney testified that "any land-disturbing activities that involve ten thousand square feet or more . . . , which include the stockpiling of materials, embankment, filling, grading, excavation, require a permit." *Id.* at 51. Regarding Novak's claim that she was engaged in an agricultural operation by maintaining pasture land for her horses, Novotney

testified that her "trucking in of soil [and] embankment fill" was not "directly related to those operations." *Id.* at 58-59.

[8] Novak further testified that the northern part of her property is shaped like a "bowl" and is lower than the farm to the west. *Id.* at 88. Regarding the emergency exception, Novak stated that after the farm changed from pasture to an active soybean and corn rotation, "it took a long time to really notice" that her property was eroding. *Id.* at 92. Novak admitted that the flooding she began to experience in her backyard was "[n]ot exactly immediate" and that "every year a little of it moved." *Id.* at 91, 97. During the hearing, Novak also invoked the nursery-operation exception, saying that she participated in a conservation program through the United States Department of Agriculture (USDA) in which she planted 7,500 trees "so that the hills would not erode." *Id.* at 116. However, she acknowledged that the fill she had brought in "is not on [that] area," i.e., the area where she planted trees as part of the conservation program. *Id.* 123. Finally, Novak testified that she was in "farm mode" and "thought [she] had the right to bring [fill] in to fix what was wrong." *Id.* at 112, 114. George Novak, Novak's son, testified that he lives with his mother and helps her keep three horses, several chickens, and six to seven goats on her property. However, he admitted that Novak's animals "don't go back" to the northern part of her property and that he gets their hay from another part of Novak's property. *Id.* at 130. George also stated that his mother took her property "out of the [USDA] conservation program this year." *Id.* at 135. George contended that "[t]he ordinance applies to everything but agricultural

property and that seems to be what we are." *Id.* at 134. At the end of the hearing, the trial court rejected Novak's exception arguments and found that she "should have applied for a permit for land-disturbing activity as required by the ordinance." *Id.* at 154. Following the hearing, the trial court issued an injunction, enjoining Novak from transporting fill onto her property and ordering her to remove any fill that was placed along the private road. *See* Appellant's App. Vol. II p. 13.

[9] Novak now appeals.

# Discussion and Decision

[10] Novak contends that the trial court erred by issuing an injunction on the ground that she violated the ordinance by engaging in land-disturbing activities without a permit. The grant or denial of an injunction is discretionary, and we will not reverse unless the trial court's action was arbitrary or constituted a clear abuse of discretion. *Dierckman v. Area Planning Comm'n of Franklin Cty.*, 752 N.E.2d 99, 104 (Ind. Ct. App. 2001), *trans. denied*. A party seeking an injunction for a zoning violation must prove: (1) the existence of a valid ordinance and (2) a violation of that ordinance. *Id.*

[11] Here, the trial court issued the injunction after finding that Novak's land-disturbing activities violated the permit requirement of Porter County Unified Development Ordinance Section 7.15. Novak claims that she is exempt from the permit requirement for three reasons: (1) she is engaged in an agricultural

operation by keeping horses, chickens, and goats; (2) she is engaged in a nursery operation; and (3) her land-disturbing activities were in response to an emergency.[1] The trial court rejected all three exceptions.

[12] First, Novak argues that she is engaged in "agricultural operations" by keeping horses, chickens, and goats and that therefore the permit requirement does not apply. The ordinance provides that the permit requirement "shall not apply to existing . . . agricultural operations." Porter Cty. Unified Dev. Ordinance § 7.15(B)(2)(b). However, there is no evidence that Novak regraded and filled the northern part of her property as part of her animal-keeping efforts. In fact, George testified that Novak's animals "don't go back" to the northern part of her property where the regrading and filling was being done. The trial court did not err in finding that Novak did not meet the agricultural-operation exception. Second, Novak argues that she operated a nursery and therefore meets the nursery-operation exception. In support of her argument, she stated that she planted 7,500 trees on her property as part of a USDA conservation program. The ordinance provides that the permit requirement "shall not apply to existing nursery . . . operations." Porter Cty. Unified Dev. Ordinance § 7.15(B)(2)(b). However, there is no evidence that maintaining those trees was the reason that she regraded and filled the northern part of her property. Indeed, Novak testified that the fill was not placed in the same area where those trees are

---

[1] Novak also argues that the trial court erred by finding her land-disturbing activities created a nuisance. Because we affirm the injunction based on the trial court's ordinance-violation ruling, we do not address its nuisance ruling.

planted. *See* Tr. p. 123. Because there is no evidence that Novak's land-disturbing activities were directly related to a nursey operation, the trial court correctly found that she is not exempt from the permit requirement of the ordinance.

[13] Finally, Novak argues that an emergency was created when the farm across the road switched from pasture to an active soybean and corn rotation and that therefore the permit requirement does not apply. The ordinance provides that the permit requirement "shall not apply to any emergency activity that is immediately necessary for the protection of life, property or natural resources." Porter Cty. Unified Dev. Ordinance § 7.15(B)(2)(c). The BZA asserts that this section "is intended to apply to circumstances where obtaining a permit is not feasible because of the '**immediate**' necessity of protecting life, property or natural resources." Appellees' Br. p. 21 (emphasis added). Novak does not support her argument with any evidence that **immediate** action was necessary to protect life, property, or natural resources. For example, there is no evidence that one day she noticed that her backyard was collapsing and that she had to take immediate action to save the rest of her land. In fact, Novak admitted that "it took a long time to really notice" that her backyard was eroding, that "every year a little of it moved," and that the flooding in her backyard was "[n]ot exactly immediate." Tr. pp. 91-92, 97. Also, the fact that the farm to the west was switched from pasture to an active soybean and corn rotation in 2009, but Novak did not decide that her property needed repair until 2017, is consistent with the lack of evidence that this was an emergency. The lack of evidence

showing any immediacy supports the trial court's finding that the emergency exception does not apply to Novak and therefore she was required to obtain a permit.

[14] Because Novak is not exempt from the permit requirement of the ordinance, the trial court did not abuse its discretion by issuing the injunction.

[15] Affirmed.

Kirsch, J., and Altice, J., concur.